UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARY 'JULIE' CLARK and JERRY CLARK, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>AMICA MUTUAL INSURANCE CO., a foreign insurance company,<br><br>Defendant. | NO: 13-CV-0082-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS |

BEFORE THE COURT is Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 10). Also before the Court is Plaintiffs' Cross-Motion for Attorney Fees (ECF No. 17). These matters were heard with oral argument on June 19, 2013. Michael J. Delay appeared on behalf of the Plaintiffs. Richard S. Lowell appeared on behalf of Defendant. The Court has reviewed the briefing and the record and files herein, had the benefit of oral argument, and is fully informed.

BACKGROUND

On March 13, 2007, Plaintiff Julie Clark was rear-ended on a freeway on-ramp in Spokane. She was insured by Defendant Amica Mutual Insurance Company. After investigation and negotiation, Plaintiff settled with the at-fault driver for policy limits ($25,000). She then submitted a formal demand for policy limits to Defendant under her underinsured motorist ("UIM") policy. After investigation, Defendant made an offer to settle the matter for less than policy limits. Plaintiff rejected this offer and filed the instant lawsuit. Plaintiff alleges extra-contractual claims of bad faith, violation of the Insurance Fair Conduct Act ("IFCA") and violation of the Consumer Protection Act ("CPA"). *See* ECF No. 1. Presently before the Court is Defendant's motion for partial judgment on the pleadings. ECF No. 10.

DISCUSSION

**A. Standard of Review**

It is well-established that Federal Rule of Civil Procedure ("FRCP") 12(c) is "functionally identical" to FRCP 12(b)(6) and the same standard of review applies to motions brought under either Rule. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc*., 637 F.3d 1047, 1055 n.4 (9th 2011). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id*. at 678-79. In assessing whether Rule 8(a)(2) is satisfied, the Court first identifies the elements of the asserted claim based on statute or case

law. *Id*. at 678. The Ninth Circuit follows the methodological approach set forth in *Iqbal* for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (*quoting Iqbal*, 129 S.Ct. at 1950).

**B. Failure to State a Claim**

Defendant asks the Court to dismiss two of Plaintiffs' extra-contractual claims for failure to state a claim, namely: (1) that Defendant improperly refused to arbitrate the UIM dispute; and (2) that Defendant is liable for the tort of outrage in regard to contact between third-party investigators and Plaintiffs' neighbors. The Court will examine each claim in turn.

1. Arbitration

The arbitration provision in Plaintiff's insurance policy states:

> If we and the insured do not agree:
>
> 1. Whether the insured is legally entitled to recover damages; or
>
> 2. As to the amount of damages which are recoverable by that insured;

> from the owner or operator of the underinsured motor vehicle, then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.
>
> **Both parties must agree to arbitration**. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

Compl., ECF No. 1 at § 3.35 (emphasis added). Plaintiff submitted multiple written demands for arbitration, which Defendant declined and noted that under the terms of the policy both parties must agree to arbitrate. *Id*. at § 3.36-3.37.

Under Washington law, insurance contracts are construed as contracts, and the terms are interpreted according to basic contract principles. *Weyerhaeuser Co. v. Comm. Union Ins. Co*., 142 Wash.2d 654, 665-66 (2000)("If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists."). However, Plaintiff does not assert any claims of ambiguity or invalidity regarding the arbitration provision in her insurance policy. Rather, Plaintiff alleges that Defendant improperly "showed a greater concern for its own monetary interests than that of its insured, [Plaintiff], without equal concern for [Plaintiff]"and "needlessly delayed resolution of [Plaintiff's] UIM claim" by refusing to arbitrate after Plaintiff submitted written demands. ECF No. 1 at § 4.3-4.4; *see Van Noy v. State Farm Mut. Auto Ins. Co*., 142 Wash.2d 784, 793 (2001)(noting quasi-fiduciary relationship exists between

insurer and insured; and "enhanced fiduciary obligation" that insurer must "deal fairly with an insured, giving equal consideration in all matters to the insured's interests as well as its own.").

Defendant argues there is no requirement for Defendant to agree to arbitrate under the terms of the policy, and thus no legal basis for Plaintiffs' extra-contractual claims regarding this issue. The Court agrees. Washington courts routinely decline to compel arbitration when the terms of the insurance policy expressly *do not* require all controversies to be settled by arbitration. *See e.g., Mutual of Enumclaw Ins. Co. v. Huddleston*, 119 Wash. App. 122, 125 (Ct. App. 2003). [1] Plaintiffs do not cite to any authority finding that a valid non-binding arbitration clause may be used to support a claim of bad faith or violation of quasi-fiduciary duties. Instead, Plaintiffs argue extensively against the hypothetical "legitimate reasons" that Defendant *may* prefer litigation over arbitration,

[1] Plaintiffs attempt to distinguish *Huddleston* on several bases, including: (1) the insurer filed the lawsuit instead of the insured; (2) insurer did not make promises of "trust, loyalty, enduring relationship, peace of mind, etc." as Defendant did here; (3) the policy in Huddleston specifically referred to "arbitration or trial" instead of only "arbitration" as it did here. None of these points serve to distinguish *Huddleston* from the instant case on the precise issue of whether Defendant had a contractual right to decline arbitration.

including: cost, limited discovery, no jury, and limited ability to appeal. [2] ECF No. 10 at 5; ECF No. 17 at 7-12; ECF No. 21 at 5-8. However, the Court finds no provision in the insurance policy, nor in binding legal authority, that obligates Defendant to identify a reason for its decision not to arbitrate when an arbitration clause is permissive instead of binding. Instead, Defendant exercised its contractual right to decline arbitration, at which point either party was free to pursue further legal action.

Furthermore, it belies common sense for the Court to find that regardless of the mutual consent between parties regarding the availability of arbitration in the terms of the policy, any plaintiff could nonetheless challenge a Defendant's contractual right to decline arbitration based on alternate grounds of quasi-fiduciary duty and bad faith. This would essentially render all non-binding arbitration provisions in insurance contracts meaningless in the face of these extra-contractual claims. For all of these reasons, the Court finds as a matter of law that Plaintiff cannot state a claim that Defendant's refusal to arbitrate was in bad faith,

---

[2] Plaintiffs appear to treat these reasons as arguments asserted by Defendants as to why they should be allowed to decline arbitration. ECF No. 17 at 7-12. However, this was only a non-exhaustive demonstrative list as to why any defendant *might* prefer litigation over arbitration. Thus, the Court declines to accord any great weight to Plaintiff's argument on this point.

or a violation of the CPA or IFCA. The Court emphasizes that this finding has no impact on the plausible factual basis for Plaintiffs' extra-contractual claims aside from Defendant's refusal to arbitrate.

2. Outrage

To establish the tort of outrage, a plaintiff must show "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Reid v. Pierce County*, 136 Wash.2d 195, 202 (1998). Furthermore, under Washington law, if the conduct is directed at a third party, the plaintiff must be an immediate family member of the person who was the object of the defendant's actions, and must be present at the time of the conduct. *See id*. (*citing Grimsby v. Samson*, 85 Wash.2d 52, 60 (1975)).

In their Complaint, Plaintiffs allege that two unidentified men knocked on the door of Plaintiffs' neighbors ("the Rusts"), threatened to call the police, and perhaps left the business card of a private investigator stuck in the door. ECF No. 1 at ¶ 3.42-3.44. Allegedly, Mr. Rust called the number and was told that the private investigator was hired to "find something useful against [Plaintiff]." Based on these actions, Plaintiff alleges that Defendant conducted a "Rambo" style of surveillance of its insured by making intimidating statements to the neighbors (*Id*. at ¶ 3.48); and allege Defendant's "conduct was outrageous and extreme to offend

the citizens of this community when conducting surveillance of its insured in a manner that was threatening, intimidating, and without regard for the safety and/or privacy of the insured's community." *Id*. at ¶ 4.12.

Defendant argues that Plaintiffs have no standing to assert claims of outrage based on actions of third-party investigators toward third party neighbors; or in the name of "the citizens of the community." While not alleged in the Complaint, Plaintiffs' responsive brief refers to "the trailing of [Plaintiff] with cameras, secretly invading her privacy" and surveillance continuing over a period of years. ECF No. 17 at 4, 12. However, the Court was unable to find any allegation in Plaintiff's Complaint that she personally experienced or witnessed any surveillance by Defendant, nor that her privacy was violated during Defendant's investigation.

The Court finds as a matter of law that Plaintiff is unable to state a claim for the tort of outrage for Defendant's alleged conduct toward a third party, in this case Plaintiff's neighbors or the "community," because Plaintiff does not allege that she was present at the time of the alleged activities. *See Reid*, 136 Wash.2d at 202-204. Defendant is "merely seeking relief solely with regard to claims related to the investigators' alleged behavior with the neighbors; nothing more." ECF No. 21 at 11. Thus, the Court expressly limits its ruling to an outrage cause of action by Plaintiff based on the investigators' contact with her neighbors, and makes no

findings as to the relevance of this evidence to the reasonableness of Defendants' investigation under WAC 284-30-330. See ECF No. 17 at 13.

**C. Plaintiffs' Cross Motion for Attorney Fees**

Plaintiffs contend they are entitled to attorney fees because Defendant did not conduct a reasonable inquiry and investigation under FRCP 11 and RCW 48.01.030, by intentionally or unintentionally failing to disclose all applicable law and facts. ECF No. 17 at 14. However, Plaintiffs provide no legal authority to support a finding that this alleged failure should result in imposition of attorney fees. Nor does the Court find any evidence that Defendant intentionally or unintentionally failed to disclose all applicable law and facts. Thus, the Court denies Plaintiffs' request for reasonable attorney fees.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Partial Judgment on the Pleadings (ECF No. 10) is **GRANTED**.
2. Plaintiffs' Cross-Motion for Attorney Fees (ECF No. 17) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** June 19, 2013.

Thomas O. Rice

THOMAS O. RICE
United States District Judge